FORSYTH COUNTY AND CITY OF WINSTON-SALEM v. J. R. PLEMMONS AND WIFE, HATTIE B. PLEMMONS

No. 6821SC237

(Filed 18 September 1968)

1. Husband and Wife §§ 14, 17— proceeds from sale of entirety property

When land held by the entirety is sold by the voluntary act of the parties, the funds derived from the sale become personalty and are held by the parties as tenants in common, there being no estate by entirety in personal property.

2. Insurance § 113— fire insurance policy — personal contract

A fire insurance policy is a personal contract appertaining to the parties to the contract and not to the thing which is subject to the risk insured against.

3. Insurance § 134— proceeds under fire insurance policy

Proceeds payable under a fire insurance policy take the place of the building destroyed only in the sense of being a thing of like value, not necessarily of like ownership.

4. Insurance § 134; Husband and Wife § 17— proceeds from fire policy on entirety property — personalty — held as tenants in common

The proceeds of a fire insurance policy insuring the interests of the husband and wife as tenants by the entirety do not retain the status of the real property destroyed but become personalty held by the husband and wife as tenants in common, the insurance proceeds resulting from a personal contract and not from an "involuntary conversion" of the property.

APPEAL by defendant, J. R. Plemmons, from *Martin, Robert M., S.J.,* 11 December 1967 Civil Session of FORSYTH Superior Court.

This case commenced 24 May 1967 as a tax foreclosure proceeding to collect unpaid *ad valorem* taxes on real property owned by defendants as tenants by the entirety. Defendants do not contest the amount or lien of such taxes, and the rights of the plaintiffs are not involved on this appeal.

Defendant husband filed answer seeking affirmative relief against his codefendant wife based on the following facts: The real property which is the subject of this action is owned by defendants as tenants by the entirety. The defendants are separated and a suit for absolute divorce is pending but no decree of divorce has been entered. In February 1967 a building on one of the lots described in the complaint was destroyed by fire. The husband has received and has in his possession a draft from the insurance company payable to the husband and wife in settlement of the fire loss, but the wife has refused to endorse the draft. On these facts the husband requested an order of the court that the proceeds of the fire insurance draft be applied first to payment of the past due taxes and that the balance be deposited in a joint savings account to the credit of the husband and wife with right of survivorship but with interest payable to the husband. The wife filed no pleadings but appeared through counsel and opposed the husband's motion. Both defendants through counsel in open court agreed that the court might hear and determine their respective rights in the fire insurance proceeds. The plaintiffs have not objected to the adjudication in this proceeding as to the rights and liabilities of the two defendants *inter se*.

The court entered an order finding the facts essentially as above set forth and concluded as a matter of law that the proceeds of the policy of fire insurance were personal property owned one-half by the husband and one-half by the wife, subject to the lien of the unpaid city-county taxes on the property on which the fire-damaged building had been located. On these findings and conclusions, the court ordered that the funds received from the insurance company be applied first to the payment of such taxes and that the balance be equally divided between the two defendants. To the entry of this order the defendant husband excepted and appealed.

*Buford T. Henderson, for defendant appellant, J. R. Plemmons.*

*W. Scott Buck, Randolph and Drum, by Clyde C. Randolph, Jr., for defendant appellee, Hattie B. Plemmons.*

PARKER, J.

*Carter v. Insurance Co.*, 242 N.C. 578, 89 S.E. 2d 122, held that the husband's interest in real property owned by himself and wife as tenants by the entirety is not insurable for his benefit alone as a separate moiety apart from the estate owned by him and his wife and that the proceeds of a policy so taken inured to the benefit of the entire estate. Therefore, upon absolute divorce the wife was held

entitled to one-half of the proceeds, even though she was not named as insured or beneficiary in the policy and had not contributed to the payment of premiums. The case now before us presents the question as to the respective rights of the husband and wife in such insurance proceeds prior to a divorce.

[1] In this State it is established that there is no estate by entirety in personal property and when land held by the entirety is sold by the voluntary act of the parties the funds derived from the sale become personalty and are held by the parties as tenants in common. *Turlington v. Lucas,* 186 N.C. 283, 119 S.E. 366. The husband in the present case contends that the insurance proceeds here in dispute are the result of an involuntary conversion of the property and therefore retain the status of real property owned by the husband and wife as tenants by the entirety just as does the compensation paid when real property so owned is taken by condemnation, citing *Highway Commission v. Myers,* 270 N.C. 258, 154 S.E. 2d 87. That case held that unless otherwise provided by the joint and voluntary agreement of the husband and wife, and in the absence of an absolute divorce, an involuntary transfer of title resulting from the taking of land by condemnation does not destroy or dissolve the estate by the entirety, and that the compensation paid has the status of real property owned by husband and wife as tenants by the entirety. We do not consider the analogy sought to be drawn determinative of the question presently before us.

[2-4] In the present case the insurance proceeds do not result from any transfer of title, voluntary or involuntary. The land is still owned by the husband and wife in exactly the same manner as before the fire. The disputed funds result solely from the terms of the contract of insurance. Under this contract the insurance company, in consideration of the premium paid to it, has assumed specified risks and has agreed to pay money to the parties insured upon the happening of certain events. Such a policy is a personal contract, appertaining to the parties to the contract and not to the thing which is subject to the risk insured against. 29 Am. Jur., Insurance, § 183, p. 575. Proceeds payable thereunder when an insured loss occurs take the place of the building destroyed only in the sense of being a thing of like value, not necessarily of like ownership. For example, a life tenant may retain as his own and the remaindermen are held to have no interest in the proceeds of a fire insurance policy covering the interests of the life tenant, even though the insurance be for the full value and the building be totally destroyed. *In re Will of Wilson,* 224 N.C. 505, 31 S.E. 2d 543; *Stockton v. Maney,* 212 N.C. 231, 193 S.E. 137.

**[4]** The identical question with which we are here concerned was decided by the New York Court of Appeals in *Hawthorne v. Hawthorne,* 13 N.Y. 2d 82, 192 N.E. 2d 20, in which the Court said:

". . . (W)e believe that the insurance proceeds in dispute here are not the result of an involuntary conversion within the meaning of the cases relied upon by respondent. Unlike those cases neither these proceeds nor the right thereto are the result of an operation of law upon the extinguishment or diminution of an estate in real property. These proceeds have been paid pursuant to a personal contract of insurance entered into between these parties and the insurance company. Although it is quite true that this case is similar to the condemnation cases in respect to the involuntary character of the loss of the realty held by the entirety, mere involuntary loss is but one side of the coin and does not suffice to support the analogy suggested by respondent. In the condemnation cases the *forced conversion* from realty to personalty was fully involuntary. The involuntary loss was also the legal source of the new *res.* Here, while the loss was the occasion of the issuance of the now disputed draft, neither the draft nor the right thereto springs from the involuntary loss. It is not a substituted *res* as in the condemnation cases. It is not involuntary *conversion.* If the insurance proceeds are the logical substitute of anything they are the fruit of the insurance contract and the premiums paid under it. In sum, while the *loss* was involuntary, the draft is not a substitute forced on the parties equally involuntarily; it is the product of their voluntary contractual act and is held by them in the same way as any personal property voluntarily acquired."

We think the reasoning in *Hawthorne v. Hawthorne, supra,* is persuasive and we adopt it as controlling the proper disposition of the case before us.

The wife has not appealed and neither party has raised any question as to that portion of the trial court's order directing payment of taxes out of the insurance proceeds before making division of the balance between the husband and the wife. Therefore we express no opinion as to the correctness of that portion of the order or as to whether the obligation for taxes accruing on property held by the entirety should be borne equally as between the husband and wife.

The order appealed from is

Affirmed.

BROCK and BRITT, JJ., concur.